May it please the Court, good morning. I am Tara Allen with the Federal Defender's Office here on behalf of the appellant, Mr. Vang. Your Honors, may I preserve three minutes for rebuttal? You just heard my spiel. Yes, I just wanted permission to do so. Sorry, that came down after briefing in this case. Mr. Vang wanted to address those two cases with regard to equitable tolling and the statutory tolling argument in the briefs. In Pace, as this Court already acknowledged recently in Espinoza-Matthews, a less rigid standard for equitable tolling. The District Court said that generally two conditions must be met for equitable tolling, that the petitioner was diligently pursuing his rights and that extraordinary circumstances stood in his way. And in this instance, in Mr. Vang's case, the District Court applied the more rigid test, extraordinary circumstances, that made it impossible for him to file. The impossibility standard was added in there. Mr. Vang posits that the test set forth in the by the Supreme Court is the more fitting test because it looks to equitable principles instead of the more mechanical test that was applied by the District Court. Mr. Vang also would like to assert that to the extent that statutory tolling may not be available to him based on any timeliness rulings that may have been made, that he would seek equitable tolling for that period as well, which he didn't have an opportunity to make such an argument. On the assumption that equitable tolling is allowed at all, Pace saves out that as a question, but on the assumption that equitable tolling is available under the statute, and on the assumption that Pace in fact makes the standards slightly more generous to habeas petitioners, on the facts of this case, why should he be entitled to equitable tolling? That is to say, what are the extraordinary circumstances that, quote, stood in his way? The extraordinary circumstances are numerous, Your Honor. Most significantly, Mr. Vang was a juvenile at the time this offense occurred, so he entered as a teenager. He entered as someone with very limited English skills. His first language is Hmong. Now, I'm not sure about the limited English skills. He came to this country at what age, 2? Arguably at 2, Your Honor. And he went through American public schools. Yes, Your Honor. So it's not as though he's coming to this country not speaking English as a teenager. That is to say, he may have limited English skills, but it's not because he just arrived. Well, Your Honor, in fact, his family's primary language is Hmong, and the record shows that that was the language that the family communicated, and this is his native language. And Petitioner asserted in his petition that he didn't he doesn't necessarily think in English, and so a lot of it, his thinking process, was translated. I'm with you. I understand. He also alleged in his petition that counsel threatened him with the death penalty if he didn't plead guilty. He didn't have an understanding that he had the right to appeal. He didn't have the understanding that he could pursue habeas relief. His counsel did not let him know about that. Well, I mean, let's start with the first one. Appeal. He's pleading guilty. What would be the subject of the appeal? Well, Your Honor, while he pled guilty, those are some — there are circumstances outside of that that he could challenge based on constitutional issues. His knowing involuntary nature of his plea, and in fact, that's one of the issues in his petition. There was no interpreter there available for Mr. Vang. Was that a subject of challenge in the original trial court? No. I'm not sure exactly what it is the counsel is supposed to be advising him about if at that time the appearance is he's pleading guilty because he did the crime and he doesn't have a defense. On some level, he would be advised, I presume, by the court that he would have a right to appeal. But beyond that, I'm not sure what counsel is expected to do. Well, counsel could have advised Mr. Vang that he had a right, if he didn't fully understand the proceedings, to appeal with regard to that. It was clear that Mr. Vang's first language was Hmong and that he didn't have an interpreter there available to him throughout any of the proceedings. Mr. Vang's position is that he did not even understand the proceedings when he pled guilty. Also, Your Honor, there was the fact that Mr. Hmong, unlike many inmates, he had never been in a jail situation before, a prison system before, although he had been in juvenile hall. He had no history of prior accessing the courts. And it's these circumstances taken in combination that provide extraordinary circumstances within the meaning of the case law. May I also make the point regarding statutory tolling? I wanted to make the point for the panel that in light of the recent changes, there's the suggestion that there may not be statutory tolling available to the Petitioner, because the Petitioner's claim that there was a denial based on Swain and Duvall, which pertains to the failure to make articulate allegations, sufficient allegations to state the claim, there's been some suggestion in Swain that a delay could also be the cause for the denial of a petition. And Petitioner wants to assert that to the extent that there was an untimeliness ruling made on his state supreme court petition, that he would seek equitable tolling for that period of time as he was diligently pursuing his remedies in court and he was relying on the law at the time that required him to exhaust his claim and to file in state court. And the basis for equitable tolling would simply be that he was trying and didn't realize that the state route wouldn't work any longer? That he detrimentally relied on the law at that time, Your Honor. Wouldn't that kind of gut the rule about Swain? I mean, anybody who's applying and gets a denial from the state supreme court on the grounds that it's too late has been trying and presumably didn't realize it was too late. Is that kind of a free pass for anybody that keeps applying to the state supreme court? Well, Your Honor, in this instance, this wasn't an instance where the Petitioner kept applying to the court. He was exhausting. He was going through the correct levels. And so to the extent that he was diligently pursuing those rights, which is one of the equitable principles, he would then not be sleeping on his rights but pursuing his rights. And to that extent, indeed, he should get equitable tolling. My time has run down. I would like to reserve a bit of time, so I'm going to step away. Thank you. Mr. Eldridge. Good morning, Your Honor. David Andrew Eldridge, Deputy Attorney General for Respondent. There was no timeliness ruling in the state court. The cite to Swain actually only addressed the articulated nature of the claims. So there – well, I would love for there to have been a timeliness finding in state court. There really wasn't one. So we're not – Just to make sure I understand you, in your view, the dismissals in the state court are on the merits rather than failure for failure filed timely in the state court? Yes. Okay. So you're willing to give the year – I think it's exactly a year – February 2001 to February 2002 as being subject to statutory tolling? Were the statute still running, yes. However, let's see. On the question of – and I'm not sure any particular questions you have, but on the issue of whether, indeed, judicial equitable tolling exists, the argument was made in the reply brief that the default statute here isn't unusually generous, as was the 12-year statute of limitations in Begley. And indeed, it's not of 12 years' duration, but the unusual generosity of the AEDPA statute of limitations comes not from the duration, but its commencement. Normally, a statute of limitations commences on the date you should have been aware of the facts. And under AEDPA, actually, you can delay that quite a bit, because it does not commence, even the default one, until the proceedings. So a person generally can appeal, which will add likely a year or even more in California. You can then attempt to take it up to the highest court of the state, which will generally add, you know, quite a bit more time. And then you can wait for 90 days, because you can seek cert, and even if you don't seek cert, you've got those 90 days. But if you do, you've got the remaining time before the United States Supreme Court denies the claim or denies certiorari. And if they grant it, you've got even more. So you've got a built-in delay, I would say, of averaging a good two years. Unless, as in this case, you plead. If you plead, yes. That argument does not apply to this case. The problem is we are looking really in terms of statutory intent, what Congress intended. And I don't think that what they intended has to vary per defendant. Either they meant for equitable holdings to exist, or they didn't. I think that's right. But to the extent you're trying to persuade me that AEDPA is a very generous statute of limitations, you're going to fail. I mean, the law is the law. It's generous or not generous. Whatever it is, it is. The reason I point it out is simply because in Beggarly, they find that to be one of the considerations in determining whether or not further equitable tolling, judicial equitable tolling should exist. Apart from whatever generosity there may be in the statute, there is also the fact that it already contains equitable factors which statutorily toll, which have been discussed in the brief. Given that as a ---- Mr. George, what is the point that you're trying to make, that equitable tolling doesn't apply? Or are you trying to ---- I mean, assuming it does, I mean, the point is whether there are exceptional circumstances. I mean, isn't that what you're looking at? Well ---- Or not? I don't think it has exceptional circumstances. Well, I understand that. I'm just trying to figure out what point you're trying to urge on us. It's actually both. One, it simply does not, it is not allowed under AEDPA because it conflicts with the AEDPA delineation. If that doesn't fly, then your position is that regardless of all that, there aren't exceptional circumstances. Correct. And one ---- yes. One of the ---- this Court asked does Pace change it, and while Pace does list that he's been pursuing his rights diligently and that some extraordinary circumstance stood in his way, the Pace court actually did not address the second one. They simply ---- What? They did not address the second one, what would be the nature of extraordinary circumstance, and they didn't indicate ---- The Pace court did not address, involve any development of what would amount to extraordinary circumstance, so I don't think it's fair to look at the case as somehow reducing the burden that's already been applied, that somehow it means something less than impossible if that's the standard, because the Pace court simply assumed for the sake of argument that there was an extraordinary circumstance, and what it addressed was diligence solely, and they found that even if we accept your extraordinary circumstance argument, you just haven't been diligent. So I don't think Pace is very instructive at all as to what other than diligence is necessary. And I take it your main argument is that he was not diligent, and they don't have, he doesn't have extraordinary circumstances to point to here. That is the argument, yes. Are you challenging on both prongs? Yes. There really is, the claim that he didn't speak English or that he had limited English skills, the court below rejected factually the claim that he somehow had insufficient English skills, and there's a strong basis of evidence for that. He, the court found the statements he was able to make to the probation officer indicated some level of sophistication in the English language. The plea transcript itself, which the court below didn't find all that persuasive, actually says more than I think the court thought it did. The court said that really it just lists him saying yes several times and then finally saying I'm doing this of my own free will after the court made a statement talking about free will. I don't think that some of the statements that he would have known what responses to make, know when to say yes, when to say guilty, or when to speak and say, I recognize that a yes or a guilty is not called for and instead I have to articulate that I'm doing this of my own free will. Given that the state court itself had a duty to find that the plea was intelligent and voluntary, and given this record, which supports a state court factual finding that he knows what he's doing and that he can speak and understand English, I don't think the I wouldn't be very impressed with the idea that somebody came into court and on cue said yes. I mean, it seems to me that the stronger argument is that he tested relatively high overall for comprehension. He'd been in this country since he was two. He'd gone to school in Sacramento through high school. And the finding can't be sort of really wrong that he had some level of comprehension of English. I'm happy to accept that. What about the various lockdowns? I mean, that seems to me part of his argument. He says, listen, I just had very restricted access to the law library. A fair amount of the time I was on lockdown, a fair amount of the time when I was not on lockdown, prison access was extremely limited. I stood outside in the rain trying to get into the library, couldn't get in sometimes. I was given an hour a week when I could get there. And that simply was not sufficient for me to educate myself within the time necessary to file the petition. How do you respond to that? Well, his argument was or his allegations were rather general in that regard. He did not, for example, say I tried every week to get in or I tried every day to get in and that each time I was denied or that I was only allowed one time or two times. What he generally said was just, you know, my time in lockdown prevented me, which is a conclusory. It's a matter of his opinion that, you know, whatever time I had really wasn't sufficient. And it's his burden to show specifically. There was nothing, for example. But at what point does it become his burden to show it how specifically? That is to say he's pro se. What pleading rules apply to him at this point? Oh, he wasn't pro se in the district court. He's not pro se in the district court? No. Well, who filed the petition whose allegations we are relying on? I believe he filed the original one and when we filed our motion to dismiss, he was represented by counsel at that time and he drafted his declaration with counsel. So the original petition is filed by him and then we have a declaration filed by counsel? With him, yes. And you're arguing then that because he has a declaration filed by counsel, we can look back to the petition and say that that was not sufficiently specific? No. I'm saying the declarations in the the allegations in the declaration weren't sufficiently specific, which was filed with counsel. I'm out of time. Thank you. Thank you. Ms. Allen. Your Honors, I would just like to make the point that Mr. Vang's point is that he had limited language skills and that he was unfamiliar with his rights and unfamiliar with the system, which is very different from having no rudimentary skills in English or not being able to communicate. And I also agree that there was no timeliness denial at the State level. And finally, Your Honors, I would say that the law of this circuit is that the AEDPA statutory period is equitably told and Mr. Vang would ask that the Court apply the law of this circuit in that regard. Thank you. Okay. Thank you, counsel. The matter just argued will be submitted.
judges: Rymer, W. Fletcher, Clifton